**SARA M. PELOQUIN**
California State Bar No. 254945
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467, Ext. 3716
Facsimile: (619)687-2666
sara_peloquin@fd.org

Attorneys for Mr. Jose Agusto Perez-Ramos

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HONORABLE JANIS L. SAMMARTINO**)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>v.<br><br>JOSE AGUSTO PEREZ-RAMOS<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO. 08CR0539-JLS<br><br>Date: August 15, 2008<br>Time: 1:30 p.m.<br><br>SUPPLEMENTAL STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MR. PEREZ-RAMOS' MOTION TO DISMISS THE INDICTMENT DUE TO AN INVALID DEPORTATION. |

## I.

## STATEMENT OF FACTS[1]

Mr. Perez-Ramos' has been in a long-term committed relationship with Alicia Montano for over ten years. Although they have never married, they live together as husband and wife. Ms. Montano is a United States citizen as are the five children she has with Mr. Perez-Ramos. Michael is ten years old; Miguel is nine years old; Emmanuel is four years old; and, Daniel is one year old. Ms. Montano is now the sole income provider and care-giver of all five children. Ms. Montano would have married Mr. Perez-Ramos while he was in removal proceedings if she had known that it could help him stay in the United States.

Mr. Perez-Ramos' third child, Christian Perez, was born in Los Angeles on June 6, 2002. He is a United States Citizen. The Los Angeles Unified School District referred Christian for an evaluation on April

[1] Mr. Perez Ramos hereby incorporates the statement of facts and exhibits submitted in his motions filed May 26, 2008. See Clerks' Docket 18.

12, 2006, at the request of his mother due to concerns about his speech development and behavior problems. On July 7, 2006, Christian was evaluated by Brandee Van Rijsbergen, the school psychologist. See Exhibit A. He was then evaluated on August 6, 2006 by June Fujimoto, M.S., CCC, a licensed speech pathologist. See Exhibit B. The purpose of these evaluations was to determine whether he was eligible for special education programs offered by the school district. Christian was diagnosed with autism and mild retardation. At age four, Christian's language development was evaluated at the equivalent of that of a twenty-two month old child. See Exhibit A, page 4. His social skills were evaluated at the equivalent of a twenty-month old child. Id. at page 5. Christian could not tell his name, age, or gender. He had a very limited vocabulary of about fifty words, using jargon and gestures to communicate. Id. at pages 5, 7, 9. Ms. Fujimoto rated Christian's self help skills as those of a thirteen month old. Id. at page 5. Christian was not toilet trained. Id. at page 5.

The School District devised an individualized program to help address Christian's developmental and social delays. Christian was referred to a special pre-school to help deal with the developmental delays expected of a child with autism. He was not able to attend either the 2006/2007, or, the 2007/2008 school year because of conflicts with his mother's work schedule. Christian's mother has since secured employment at night so that she will be able to take the children, including Christian to school during the day-time. A babysitter now comes at night to care for the children.

Christian will require a significant amount of one-on-one attention both at school and at home in order to most effectively address his autism and developmental delays. See Exhibit C. Christian cannot be left to his own devices to learn language and social skills that other children would learn from playing with other children. Id. Due to his autism and developmental delay, Christian must be made to concentrate on communicating and socializing in one-on-one situations with adults. Id.

Having a sibling with a autism is a significant stress on young children. They inevitably get less parental attention because of the significant amount of care an autistic child requires. This can lead to jealousy, anger and social maladjustment.

//

//

//

## II.

## MR. PEREZ-RAMOS'DUE PROCESS RIGHTS WERE VIOLATED AT HIS 2007 DEPORTATION AND HE SUFFERED PREJUDICE BECAUSE HE HAD 'PLAUSIBLE GROUNDS FOR RELIEF.

### A. Summary of Argument

On December 1, 2006, Immigration and Customs Enforcement (ICE) commenced deportation proceedings against Mr. Perez-Ramos. The IJ presiding over Mr. Perez-Ramos' deportation hearing in 2007 ordered him deported under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act. Mr. Perez-Ramos' due process rights were violated at his 2007 deportation hearing.

The IJ did not advise Mr. Perez-Ramos that he could have waived his ground of inadmissibility (his alleged criminal conviction) by applying for a waiver of that ground under INA Section 212(h).[2]

This due process violation prejudiced Mr. Perez-Ramos because it is "plausible" that he would have been granted a waiver of inadmissibility under INA Section 212(h) because his United States citizen family

---

[2] Persons who are inadmissible under the grounds relating to moral turpitude offenses, drug offenses of 30 grams or less of marijuana, prostitute and commercialized vice, five year sentence for two convictions, and foreign diplomats asserting immunity from prosecution can apply for a waiver under INA Section 212(h). Had Mr. Perez-Ramos been advised by the IJ that he could marry Ms. Montano and adjust his status pursuant to INA Section 245, he very likely could have been approved as a beneficiary of an approved visa petition which would have allowed for his immediate immigration to the United States. Mr. Perez-Ramos could have applied for adjustment of status based on the fact that he is the husband and parent of U.S. citizens who would (and indeed, did) suffer extreme hardship upon Mr. Perez-Ramos' deportation.

Both the Immigration and Nationality Act and case recognize the importance of familial bonds to an adjustment of status application. Indeed, the I.N.A. goes so far as to permit a marriage while in proceedings in order to render an alien eligible for relief, so long as the alien can demonstrate "that the marriage was entered into in good faith." See 8 U.S.C. § 1255(e). "The **sole** inquiry in determining whether a marriage was entered into in good faith is whether the parties intended to establish a life together at the time of the marriage." Case law interprets "good faith" broadly. A marriage may be entered into in good faith even if one of the parties has a dual intent. See United States v. Orellana-Blanco, 294 F.3d 1143, 1151 (9th Cir. 2002) ("Just as marriages for money, hardly a novelty, or marriages among princes and princesses for reasons of state may be genuine and not sham marriages, so may marriages for green cards be genuine. An intent to obtain something other than or in addition to love and companionship from that life does not make a marriage a sham, for purposes of immigration laws. Rather, the sham arises from the intent not 'to establish a life together.'"). A person who gets married for "love for a green card" enters into a marriage in good faith, so long as he intends to establish an actual and legitimate relationship with his spouse. Id. at 1151-52.

A person may establish a prima facie case of good faith by adducing evidence that he knew his spouse for several years and has children with the person. See Matter Velarde-Pacheco, 23 I. & N. Dec. 253, 256 (BIA 2002) (finding prima facie case of good faith where petitioner submitted an affidavit that he had known his wife for four years and adduced a birth certificate for his and his wife's son); see also Matter of Rahmati, 16 I. & N. Dec. 538, 539 (BIA 1978) (finding that marriage was not entered into for the purpose of evading the immigration laws where the alien and his citizen spouse lived together as man and wife and had a child together). Mr. Perez-Ramos had been in a relationship with Ms. Montano at least since before the birth of their first child in 1997. Damon v. Ashcroft, 360 F.3d 1084, 1089 (9th Cir. 2004) (emphasis added); Bark v. INS, 511 F.2d 1200, 1202 (9th Cir. 1975). So long as a marriage is valid, the INA permits a couple marry while in proceedings to make an alien eligible for adjustment.

would have, and did, suffer 'extreme hardship' due to his son Christian's autism. As there is no other deportation the government may rely on in prosecuting him, Mr. Perez-Ramos moves this Court for an order dismissing the indictment.

**i. Mr. Perez-Ramos suffered prejudice at his removal hearing because he had plausible grounds for relief.**[3]

Mr. Perez-Ramos suffered prejudice as a result of this due process violation. To demonstrate prejudice at his removal hearing, Mr. Perez-Ramos "does not have to show that he actually would have been granted relief. Instead, he must only show that he had a 'plausible' ground for relief from deportation." United States v. Ubaldo-Figueroa, 364 F.3d 1042, at 1050 (9th Cir. 2004) (internal citation omitted); United States v. Jimenez-Marmolejo, 104 F.3d 1083 (1996). Once a defendant has made a prima facie showing of prejudice, it is the government burden "'to demonstrate that the procedural violation could not have changed the proceedings' outcome.'" United States v. Gonzalez-Valerio, 342 F.3d 1051, 1054 (9th Cir. 2003); see also United States v. Ortiz-Lopez, 385 F.3d 1202, at 1205 (9th Cir. 2004) (quoting same).

In order to qualify for relief from deportation under INA section 212(h), there must be a showing of 'extreme hardship' to a qualifying United States citizen family member resulting from the deportation. Shooshtary v. INS, 39 F.3d 1049 (9th Cir. 1994). The hardship shown must be "beyond the common results of deportation." Id. at 1051. The preservation of family unity may be a central factor when determining whether 'extreme hardship' has been shown. United States v. Arrietta, 224 F.3d 1076 (9th Cir. 2000); citing Cerrillo-Perez v. INS, 809 F.2d 1419 (9th Cir. 1987).

An aggravated felony conviction is not a *per se* bar to 212(h) relief; in fact, even a person with a prior conviction for forcible rape may have a plausible claim to relief. United States v. Arrietta, 224 F.3d 1076. In Arrietta, the Ninth Circuit held that Mr. Arrietta was prejudiced by the due process violation attendant to his deportation because he was a significant financial support to his U.S. citizen mother and siblings, and

---

[3] In determining whether Mr. Perez-Ramos' circumstances may have moved an immigration judge to grant him discretionary relief, this Court is held to the plausibility standard affirmed by Supreme Court and Ninth Circuit precedent, not—as the government may assert—to a higher standard that may have been employed by some immigration judges in some immigration hearings in 2007. Simply put, it is not this Court's task to hold a belated immigration hearing, to attempt to recreate history. Nor is it this Court's role to decide whether it would have granted relief in Mr. Perez-Ramos' case. Unlike the hypothetical immigration judge to whom Mr. Perez-Ramos' § 212(h) and adjustment of status claim might have been assigned back in 2007, this Court does not have the discretion to make a close call in the government's favor. To the contrary, if this Court finds that relief was plausible, then Mr. Perez-Ramos must prevail.

played a critical role in raising his younger siblings due to his mother's poor health. Id. Based on these facts, the Ninth Circuit held that he had made a plausible showing of "extreme hardship" to qualifying family members such that it required the dismissal of the indictment.

The Board of Immigration Appeals (BIA) found "unusual and outstanding equities," required as threshold matter for persons with serious conviction seeking discretionary grant of relief from deportation under INA Section 212 (c), where deportation would cause hardship to the wife and four United States citizen children. Matter of Edwards, 20 I.&N. Dec.191 (1990). Of particular import in that decision was the hardship to the respondent's autistic child. Id.

Mr. Perez-Ramos has five United States citizen children with his long time long-term committed partner, Alicia Montano. Mr. Perez-Ramos provided child-care for the children while Ms. Montano worked. Their middle child, Christian, has been diagnosed with autism. Although he has been eligible for special early childhood education for the past two years, he has not been able to take advantage of it because it conflicts with Ms. Montano's work schedule and Mr. Perez-Ramos has not been present to help. The single most important factor for Christian's future development is early intervention at school and at home. He has already missed out on two years of early education due to Mr. Perez-Ramos' deportation. Because Ms. Montano is now not only the sole bread-winner, but also the primary care-giver, Christian has only one person to turn to for his needs at home. Therefore, Mr. Perez-Ramos' deportation has resulted in extreme hardship to his U.S. citizen son, Christian Perez.

The four remaining children have also suffered extreme hardship because with only one parent and a sibling with special needs, they receive significantly less parental attention, guidance and support than they otherwise would if they had two parents in the home. This is particularly significant because although many children are raised in single parent homes, the remaining parent in this home must devote significant amounts of her time and energy to Christian. Because much of that time must be one-on-one, the other children are necessarily excluded. This has resulted in jealous fighting among the siblings, particularly between Christian and Emanuel.

Ms. Montano has also experienced extreme hardship due to Mr. Perez-Ramos' deportation. Ms. Montano has to financially support and manage a household with five children alone. Also, Ms. Montano must arrange her work schedule in order to accommodate Christian's school needs, which has

resulted in her working nights. There is no one to provide Ms. Montano with respite from her household responsibilities.

All the children and Ms. Montano miss Mr. Perez-Ramos very much. He is an integral part of their lives. The combined hardship to Ms. Montano and the children is "extreme and unusual" because without him it is nearly impossible to manage a house with five children aged ten to one, particularly where the middle child has autism and requires increased attention.

**B. Summation**

Mr. Perez-Ramos' due process rights were violated at his deportation hearing in 2007. He suffered prejudice as a result of that due process violation. The government may not, therefore, use Mr. Perez-Ramos' 2007 deportation as a basis for its prosecution. As there is no other removal order on which the government may rely, Mr. Perez Ramos requests that this Court dismiss the indictment.

## III.

## CONCLUSION

For the reasons stated, Mr. Perez-Ramos requests this Court grant his motions.

Respectfully submitted,

Dated: August 5, 2008

*/s/ Sara M. Peloquin*
**SARA M. PELOQUIN**
Federal Defenders of San Diego, Inc.
Attorneys for Mr. Perez-Ramos

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of her information and belief, and that a copy of the foregoing document has been served this day upon:

Christopher Alexander
Christopher.Alexander@usdoj.gov; efile.dkt.gc1@usdoj.gov,

Dated: August 5, 2008

*/s/* Sara M. Peloquin

SARA M. PELOQUIN
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467 (tel)
(619) 687-2666 (fax)
E-mail: sara_peloquin@fd.org