KAREN P. HEWITT
United States Attorney
CARLOS O. CANTU
Special Assistant U.S. Attorney
Government Attorney
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7425 /(619) 235-2757 (Fax)
Email: Carlos O. Cantu@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JOSE AGUSTO PEREZ-RAMOS,<br><br>Defendant. | Criminal Case No. 08CR0539-JLS<br><br>HEARING DATE: August 15, 2008<br>TIME: 1:30 p.m.<br><br>UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS TO:<br>(1) DISMISS INDICTMENT UDE TO IMPROPER JURY INSTRUCTIONS;<br>(2) DISMISS INDICTMENT DUE TO INVALID DEPORTATION;<br>(3) SUPPRESS STATEMENTS; AND<br>(4) GRANT LEAVE TO FILE OTHER MOTIONS.<br><br>TOGETHER WITH MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW the plaintiff, the UNITED STATES OF AMERICA, by and through its counsel, KAREN P. HEWITT, United States Attorney, and Carlos O. Cantu, Special Assistant United States Attorney, and hereby files its Response and Opposition to Defendant's Motions. This Response is based upon the files and records of the case together with the attached memorandum of points and authorities.

**I**

**STATEMENT OF THE CASE**

On February 27, 2008, an Indictment was returned in the Southern District of California charging Defendant Jose Agusto Perez-Ramos ("Defendant") with being a deported alien attempting to enter the United States in violation of 8 U.S.C. § 1326. On March 4, 2008, the Court arraigned Defendant on the Indictment and entered a not guilty plea. The Court scheduled a motion hearing date.

On March 7, 2008, the United States filed motions for reciprocal discovery and fingerprint exemplars. On March 14, 2008, Defendant filed motions to compel discovery and grant leave to file further motions.

On March 28, 2008, the Court held a motion hearing and continued the motions to May 9, 2008. After the hearing, it became clear there was a discovery dispute regarding production of the A-File. On April 7, 2008, Defendant filed a motion for production of the A-File. The United States responded. On May 28, 2008, Defendant filed motions to dismiss the indictment due to grand jury instructions, dismiss the indictment due to invalid deportation, suppress statements, and grant leave to file further motions. The United States now responds.

**II**

**STATEMENT OF FACTS**

**A. The Apprehension**

On Monday, February 18, 2008, Border Patrol Agent David H. Nguyen was conducting line watch operation in the Imperial Beach Border Patrol Station area of operations. At approximately 7:20 a.m., Border Patrol Agent Kevin Wies radioed via service radio that he observed two individuals running south in an area known as "compos's Ditch." "Campo's Ditch" is approximately 4 miles west of the San Ysidro, California Port of Entry and approximately 40 yards north of the United States/Mexico International Boundary.

Agent Nguyen responded to the area that Agent Wies last observed the individuals. After a brief search, Agent Nguyen discovered two individuals attempting to conceal themselves in some brush. Due to the fact that this area is commonly used by undocumented immigrants to further their illegal entry into the United States, Agent Nguyen identified himself as a United States Border Patrol Agent and conducted an immigration inspection. Both individuals, including one later identified as Perez-Ramos, Jose Agusto, freely admitted to being citizens and nationals of Mexico, not in possession any immigration documents that would allow them to legally enter or remain in the United States. Agent Nguyen arrested both individuals at approximately 7:30 a.m, and subsequently arranged for their transport to the Imperial Beach Border Patrol Station for processing.

**B. <u>Defendant's Statements</u>**

On February 18, 2008, at approximately 9:31 a.m., Perez provided a DVD recorded sworn statement before Border Patrol Agent Rodolfo Zuniga witnessed before Border Patrol Agent Salvador Correa. During this sworn statement, Perez was advised that his administration rights no longer applied and that he was going to be charged criminally.

On February 18, 2008, at approximately 9:31 a.m., Border Patrol Agent Salvador Correa witnessed Agent Rodolfo Zuniga give Perez his Consular Communication Rights in the Spanish language. Perez understood his Miranda rights and was not willing to answer questions without an attorney present under oath at this time. All questioning ceased at this time.

**C. Defendant's Criminal and Immigration Histories**

Defendant was convicted of felony lewd or lascivious acts with a child under 14, in violation of California Penal Code Section 288(a), in the California Superior Court of Los Angeles on May 16, 2007. For that offense, Defendant was sentenced to 173 days in jail and five years probation. In addition, Defendant was convicted of forgery of official seal, in violation of California Penal Code Section 472, in the California Superior Court of Downey on September 30, 2000, and received a sentence of 90 days in jail and 36 months probation. Defendant was also convicted of trespass: occupy property without consent, in violation of California Penal Code Section 602(l), on June 8, 2000, and was sentenced to three days jail and 112 days probation. Defendant was convicted of trespass: occupy property without consent, in violation of California Penal Code Section 602(l), on February 20, 1997,

and was sentenced to two days in jail and 12 months of probation. Finally, Defendant was convicted of trespass: occupy property without consent, in violation of California Penal Code Section 602(l), on January 13, 1997, and was sentenced to two days in jail and 12 months of probation.

Defendant was found inadmissible and ordered removed to Mexico on July 16, 2007. Defendant was physically removed to Mexico July 25, 2007.

## III

## THE GRAND JURY WAS PROPERLY INSTRUCTED

In addition to challenges previously rejected by the Ninth Circuit, Defendant makes two challenges contentions relating to instructions given to the grand jury during its impanelment by District Judge Larry A. Burns. Although recognizing that the Ninth Circuit in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc) generally found the grand jury instructions constitutional, Defendant here contends Judge Burns went beyond the text of the approved instructions, and by so doing rendered them improper warranting dismissal of the Indictment.

In making his arguments concerning the instructions Defendant urges this Court to dismiss the Indictment on two separate bases relating to grand jury procedures, both of which were discussed in United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992). Concerning the first attacked instruction, Defendant urges this Court to dismiss the Indictment by exercising its supervising powers over grand jury procedures. This is a practice the Supreme Court discourages as Defendant acknowledges, citing United States v. Williams, 504 U.S. 36, 50 (1992) ("Given the grand jury's operational separateness from its constituting court, it should come as no surprise that we have been reluctant to invoke the judicial supervisory power as a basis for prescribing modes of grand jury procedure."). Isgro reiterated:

> [A] district court may draw on its supervisory powers to dismiss an indictment. The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct. Absent such prejudice-that is, absent "'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"-a dismissal is not warranted.

974 F.2d at 1094 (citation omitted, emphasis added). Concerning the second attacked instruction, in an attempt to dodge the holding in Williams, Defendant appears to base his contentions on the Constitution as a reason to dismiss the Indictment. Concerning that kind of a contention Isgro stated:

> [A] court may dismiss an indictment if it perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding. "Constitutional error is found where the 'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant." Constitutional error may also be found "if [the] defendant can show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed."

974 F.2d at 1094 (citation omitted).

The portions of the two relevant instructions approved in Navarro-Vargas were:

> You cannot judge the wisdom of the criminal laws enacted by Congress, that is, whether or not there should or should not be a federal law designating certain activity as criminal. That is to be determined by Congress and not by you.

408 F.3d at 1187, 1202.

> The United States Attorney and his Assistant United States Attorneys will provide you with important service in helping you to find your way when confronted with complex legal problems. It is entirely proper that you should receive this assistance. If past experience is any indication of what to expect in the future, then you can expect candor, honesty, and good faith in matters presented by the government attorneys.

408 F.3d at 1187, 1206.

Concerning the "wisdom of the criminal laws" instruction, the court stated it was constitutional because, among other things, "[i]f a grand jury can sit in judgment of wisdom of the policy behind a law, then the power to return a no bill in such cases is the clearest form of 'jury nullification.'" 408 F.3d at 1203 (footnote omitted). "Furthermore, the grand jury has few tools for informing itself of the policy or legal justification for the law; it receives no briefs or arguments from the parties. The grand jury has little but its own visceral reaction on which to judge the 'wisdom of the law.'" Id.

Concerning the "United States Attorney and his Assistant United States Attorneys" instruction, the court stated:

> We also reject this final contention and hold that although this passage may include unnecessary language, it does not violate the Constitution. The "candor, honesty, and good faith" language, when read in the context of the instructions as a

> whole, does not violate the constitutional relationship between the prosecutor and grand jury. . . . The instructions balance the praise for the government's attorney by informing the grand jurors that some have criticized the grand jury as a "mere rubber stamp" to the prosecution and reminding them that the grand jury is "independent of the United States Attorney[.]"

408 F.3d at 1207. Id. "The phrase is not vouching for the prosecutor, but is closer to advising the grand jury of the presumption of regularity and good faith that the branches of government ordinarily afford each other." Id.

Any instruction that Assistant United States Attorneys are duty-bound to present evidence that cuts against returning an indictment is directly contradicted by United States v. Williams, 504 U.S. 36, 51-53 (1992) ("If the grand jury has no obligation to consider all 'substantial exculpatory' evidence, we do not understand how the prosecutor can be said to have a binding obligation to present it." (emphasis added)); see also United States v. Haynes, 216 F.3d 789, 798 (9th Cir. 2000) (" . . . prosecutors have no obligation to disclose 'substantial exculpatory evidence' to a grand jury." (citing Williams).

However, the analysis does not stop there. Prior to assuming his judicial duties, Judge Burns was a member of the United States Attorney's Office, and made appearances in front of the federal grand jury. As such he was undoubtedly aware of the provisions in the United States Attorneys' Manual ("USAM").[1/] Specifically, it appears he is aware of USAM Section 9-11.233 thereof which reads:

> In United States v. Williams, 112 S.Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury. It is the policy of the Department of Justice, however, that when a prosecutor conducting a grand jury inquiry is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person. While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.

(Emphasis added.)[2/] This policy was reconfirmed in USAM 9-5.001, Policy Regarding Disclosure of Exculpatory and Impeachment Information, Paragraph "A," "this policy does not alter or supersede the

---

[1/] The USAM is available on-line at www.usdoj.gov/usao/eousa/foia_reading_room/usam/index.html.

[2/] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/11mcrm.htm. Even if Judge Burns did not know of this provision in the USAM while he was a member of the United States Attorney's Office, as the District Judge overseeing the grand jury, he could determine the required duties of the United States Attorneys appearing before the grand jury from that source.

policy that requires prosecutors to disclose 'substantial evidence that directly negates the guilt of a subject of the investigation' to the grand jury before seeking an indictment, see USAM § 9-11.233 ." (Emphasis added.)[3/]

The fact that Judge Burns' statement contradicts Williams, but is in line with self-imposed guidelines for United States Attorneys, does not create the constitutional crisis proposed by Defendant. If "substantial" exculpatory evidence exists, as mandated by the USAM, the evidence should be presented to the grand jury by the Assistant U.S. Attorney upon pain of possibly having his or her career destroyed by an Office of Professional Responsibility investigation. There is nothing wrong with a grand juror inferring that there is no "substantial" exculpatory evidence, or even if some exculpatory evidence were presented, the evidence presented represents the universe of all available exculpatory evidence.

Further, just as the instruction language regarding the United States Attorney attacked in Navarro-Vargas was found to be "unnecessary language [which] does not violate the Constitution," 408 F.3d at 1207, so too the "duty-bound" statement was unnecessary when charging the grand jury concerning its relationship with the United States Attorney and her Assistant U.S. Attorneys, and does not violate the Constitution. In United States v. Isgro, 974 F.2d 1091 (9th Cir. 1992), the Ninth Circuit while reviewing Williams established that there is nothing in the Constitution which requires a prosecutor to give the person under investigation the right to present anything to the grand jury (including his or her testimony or other exculpatory evidence), and the absence of that information does not require dismissal of the indictment. 974 F.2d at 1096 ("Williams clearly rejects the idea that there exists a right to such 'fair' or 'objective' grand jury deliberations."). Therefore, while the "duty-bound" statement was an interesting tidbit of information, it was unnecessary in terms of advising the grand jurors of their rights and responsibilities, and does not render the instructions unconstitutional. The

---

[3/] See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/5mcrm.htm. Similarly, this new section does not bestow any procedural or substantive rights on defendants.

> Under this policy, the government's disclosure will exceed its constitutional obligations. This expanded disclosure policy, however, does not create a general right of discovery in criminal cases. Nor does it provide defendants with any additional rights or remedies.

USAM 9-5.001, ¶ "E." See www.usdoj.gov/usao/eousa/foia_reading_room/usam/title9/ 5mcrm.htm.

grand jurors were instructed by Judge Burns that, in essence, the United Sates Attorneys are "good guys," which was authorized by Navarro-Vargas. 408 F.3d at 1206-07 ("laudatory comments . . . not vouching for the prosecutor"). But he also repeatedly "remind[ed] the grand jury that it stands between the government and the accused and is independent," which was also required by Navarro-Vargas. 408 F.3d at 1207. In this context, the unnecessary "duty-bound" statement does not render the instructions constitutionally defective requiring dismissal of this Indictment.

The "duty bound" statement does not indicate that the "'structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice' to the defendant," and "[the] defendant can[not] show a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed." Isgro, 974 F.2d at 1094 (citation omitted). Therefore, this Indictment, or any other indictment, need not be dismissed.

**IV**

**DEFENDANT'S DEPORTATION WAS VALID**

Defendant's removal hearing did not violate due process. Defendant was placed in removal proceedings and charged with being inadmissible under INA Section 212(a)(6)(A)(i), as an alien who was present in the United States without first being properly inspected and admitted by an immigration officer. As an alien charged with a ground of inadmissibility, Defendant bore the burden of establishing that he was "clearly and beyond doubt entitled to be admitted and is not inadmissible under section 212; or by clear and convincing evidence, that the alien is lawfully present in the United States pursuant to a prior admission." See INA § 240(c)(2)(A)-(B). Defendant failed to meet that burden in removal proceedings before the Immigration Judge.

In addition, Defendant's assertion that he was eligible for a waiver of inadmissibility under INA Section 212(h) is without merit. Defendant asserts that he was denied due process because he was eligible for adjustment of status and a waiver of inadmissibility under INA Section 212(h). Defendant, however, failed to demonstrate how he was eligible for adjustment of status.

In order to apply for adjustment of status in the United States, an applicant must have an approved alien relative petition with a current priority date available to him. See, *inter alia*, INA

§ 245(a). In addition, the alien must affirmatively apply for adjustment of status to be granted that benefit. Id. Moreover, aliens who enter the United States without being inspected and admitted are ineligible for adjustment of status in the United States unless they demonstrate that an alien relative petition was filed on or before April 30, 2001. INA § 212(i).

Defendant did not, and cannot, demonstrate that a qualifying relative filed an alien relative petition on his behalf on or before April 30, 2001. Indeed, Defendant did not have a U.S. citizen or lawful permanent resident spouse or parent to petition for him to immigrate to the United States. In addition, Defendant did not have a U.S. citizen child over the age of 21 to file an alien relative petition on his behalf. Without an approved alien relative petition, Defendant was ineligible to apply adjustment of status in the United States. *See generally* INA § 204.

Without an qualifying relative to petition Defendant to immigrate to the Untied States, Defendant was ineligible for adjustment of status; and without an application for adjustment of status, Defendant could not seek a waiver of inadmissibility under INA Section 212(h), as the waiver applies to aliens who are seeking admission into the United States as immigrants. Accordingly, Defendant's assertion that he was eligible for a waiver of inadmissibility under INA Section 212(h) is completely without merit.

Defendant, therefore, was inadmissible at the time of his removal hearing in 2007, and was ineligible for any relief from removal. As such, Defendant did not have grounds for relief as a matter of law and suffered no prejudice at his removal hearing. Defendant's removal hearing, therefore, did not violate due process.

## V

## DEFENDANT'S MOTION TO SUPPRESS STATEMENTS SHOULD BE DENIED

Defendant moves to suppress his statements. Defendant argues that his field statements should be suppressed because he was in custody.

### A. Defendant's Motion Should Be Denied Without a Hearing

The Court should deny Defendant's motion to suppress without a hearing. Under Ninth Circuit and Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts

sufficient to require the granting of Defendant's motion. United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) (where "defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer, . . . . the district court was not required to hold an evidentiary hearing").

Here, in clear opposition to Local Rule 47.1(g), Defendant has failed to attach a declaration creating an issue of fact regarding Defendant's field admission or post-arrest Miranda waiver. As such, this Court should deny Defendant's motion to suppress, based on the Statement of Facts attached to the Complaint in this case, that all of Defendant's statements were voluntarily made.

**B. Defendant's Pre-arrest Statements Should Not Be Suppressed**

Defendant argues that his statements made prior to his arrest were made while in custody. In Miranda v. Arizona, 396 U.S. 868 (1969), the Supreme Court held that under the Fourth Amendment a person must be advised of his rights prior to incriminating questioning after custodial arrest. Defendant's arguments are merit less for three reasons. First, Defendant was not in custody when he was questioned. Second, Defendant was not subjected to incriminating questioning while in custody. Third, if Defendant was subjected to a stop, reasonable suspicion supported the stop.

1. A Reasonably Innocent Person Would Feel Free to Leave After Questioning

First, to determine whether a person is in custody for purposes of Miranda, a court looks to the circumstances surrounding the interrogation. United States v. Bravo, 295 F.3d 1002 (9th Cir. 2002) ("whether an invidividual in custody depends upon the objective circumstances of the situation, or whether "'a reasonable innocent person . . . would conclude that after brief questioning he or she would not be free to leave."'"). Since Defendant was not in custody during his initial questioning, there was no need for Miranda warnings.

Defendant argues that he was in custody when told to stop. However, it is well settled that a law enforcement officer, like anyone else, may approach another person in a public place and ask questions. "[T]he Fourth Amendment permits police officers to approach individuals at random in airport lobbies and other public places to ask them questions and to request consent to search their luggage, so long as a reasonable person would understand that he or she could refuse to cooperate."

Florida v. Bostick, 501 U.S. 429, 431 (1991). This rule "applies equally" to police encounters that take place on trains, planes, buses, and "city streets." Id. at 438, 439-40.

The fact that the law enforcement officer identifies himself as such does not convert the encounter into a seizure. Florida v. Royer, 460 U.S. 491, 497-98 (1983). Nor does the fact that he wears a gun or uniform or displays a badge. United States v. Drayton, 536 U.S. 194, 204-205 (2002); Bostick, 501 U.S. at 432. The person approached may decline to talk, may choose to leave, Royer, 460 U.S. at 497-98, or may "disregard the police and go about his business." California v. Hodari D., 499 U.S. 621, 626-67 (1991). A person is not "seized" under the Fourth Amendment unless, under all the circumstances, a reasonable (innocent) person would have believed that he was not free to leave. United States v. Mendenhall, 446 U.S. 544, 554 (1980). If there is no detention, there is no seizure, no need for reasonable suspicion, and no Fourth Amendment violation. Royer, 460 U.S. at 497-98; Terry v. Ohio, 392 U.S. 1, 19, n.16 (1968). The Supreme Court has applied this rule in a "long, unbroken line of decisions dating back more than 20 years." Bostick, 501 U.S. at 439.

a. Supreme Court Authority on Consensual Encounters

This "long, unbroken line of decisions" controls this case and compels the conclusion that there was no seizure here. The following Supreme Court cases examine consensual public encounters on buses, in the workplace, in airports, or on the street and hold that there is no seizure where there is no physical stop, no detention, and no coercion.

In Immigration and Naturalization Service v. Delgado, 466 U.S. 210 ( 1984), the Supreme Court held there was no seizure when Immigration and Naturalization Service ("INS") agents visited factories and questioned employees to determine whether they were illegal aliens. Id. at 211-12. During the encounter, several agents positioned themselves near the building exits, while other agents--with badges, walkie-talkies and guns-- moved throughout the factory and questioned the workers. Id. If the worker gave a credible reply that he was a United States citizen, the questioning ended. If the worker gave an unsatisfactory response, the agent asked further questions. Id. at 212-13.

Noting that the Fourth Amendment "does not proscribe all contact between the police and citizens," only "arbitrary and oppressive interference," id. at 215, the Court said that "police questioning, by itself, is unlikely to result in a Fourth Amendment violation." Id. at 216. The fact that "most citizens will respond to a police request . . . and do so without being told they are free not to respond, hardly eliminates the consensual nature of the response." Id. (citing Schneckloth v. Bustamonte, 412 U.S. 218 ( 1973)).

In Mendenhall, 446 U.S. 544, a plurality of the Supreme Court first discussed whether Mendenhall was "seized" when approached by Drug Enforcement agents at the airport and asked questions.[4/] As stated by the Court:

> "[o]bviously, not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

Id. at 552 (quoting Terry, 392 U.S. at 19, n.16). The Court then discussed the "seizure" in Terry, where the police officer grabbed Terry, spun him around, and patted down his clothing, while noting that apparently no seizure had taken place before Terry was grabbed. Id. at 553-54.

The Court in Mendenhall also discussed Brown v. Texas, 443 U.S. 47, 49 (1979), noting that Brown was not "seized" when approached by two police officers in an alley, asked to identify himself, and asked to explain why he was there. Mendenhall, 446 U.S. at 556. But after Brown refused to identify himself and angrily told the officers that they had no right to stop him or question him, the officers frisked him and arrested him for refusing to give his name when "lawfully stopped." Id. There was a seizure at this point.

b. Ninth Circuit Case Law on Consensual Encounters

Relying on the Supreme Court cases discussed above, the Ninth Circuit has similarly held that police encounters in airports and on the street and highway do not constitute seizures without Government coercion. In United States v. Kim, 25 F.3d 1426 (9th Cir. 1994), this Court stated that

---

[4/] This part of the opinion was written by Justice Stewart and joined by Justice Rehnquist. Chief Justice Burger, Justice Blackmun, and Justice Powell concurred in the judgment, while noting that "(they) did not necessarily disagree with the views expressed in Part II-A" (on the initial seizure issue), but the question was "extremely close" given that Mendenhall produced her license and airline ticket. Id. at 560 n.1.

"[a]bsent indicia of force or aggression, a request for identification or information is not a seizure or investigatory stop." Id. at 1430. The Ninth Circuit held that there was no stop or seizure when two police officers asked the occupants to get out of their parked car,[5/] separated them for questioning, and the officers' car partially blocked Kim's vehicle. Id. at 1428-36.[6/]

Similarly, in United States v. Woods, 720 F.2d 1022 (9th Cir. 1983), Deputy Lundsford, accompanied by two other police officers, walked up to Woods and Goldstein, in the cocktail lounge of an airport. Deputy Lundsford identified themselves as police officers, told them they were investigating a possible narcotics transaction, asked for identification, and asked them some questions. Id. at 1025. Relying on Florida v. Royer, 460 U.S. 491 (1983), the Ninth Circuit went on to hold that the statements were voluntary responses to permissible and limited questions prior to any physical detention of seizure of their persons, and therefore the Fourth Amendment was not violated. Id. at 1026. Finally, the fact that the officers may have detained them if they tried to leave was irrelevant. Id.

c. Defendant was Not Seized

As the report attached to Defendant's motion states, Defendant was already stopped laying on the ground. Defendant's declaration does not contest that he was already stopped. Rather, he alleges that FOS Cortez pointed his baton at him and "ordered" him not to move. Defendant does not alleged that he tried to leave and was stopped. Nothing in the report or the declaration indicates that Defendant's encounter with FOS Cortez was anything but consensual.

Under the applicable Supreme Court and Ninth Circuit authority, Defendant was not seized. Police questioning, by itself, is unlikely to result in a Fourth Amendment violation. Delgado, 466 U.S. at 216. The Fourth Amendment permits police officers to approach persons in public places to ask them questions. Bostick, 501 U.S. at 431. Absent force or coercion, requesting information is not a seizure. Kim, 25 F.3d at 1430.

---

[5/]Relying on Mendenhall, 446 U.S. at 556-57, this Court noted that stopping car occupants for questioning typically involves a greater degree of intrusiveness than questioning of pedestrians and thus more readily impinges on the Fourth Amendment. Id. at 1430.

[6/]Even if the agent's car had "more completely blocked" Kim's car, there would be no seizure, because Kim could have walked away. Id. at 1431 n.2.

Defendant was not stopped or detained, and no force or coercion was used in questioning him. For these reasons, there was no "seizure" under the Fourth Amendment and no need for probable cause.[7/]

2. Detention of Border Questioning Does Not Require a Miranda Warning

Second, detaining a person for routine border questioning is not custodial. See United States v. Galindo-Gallegos, 244 F.3d 728, 731 (9th Cir.), modified by 255 F.3d 1154 (9th Cir. 2001). Consistent with Galindo-Gallegos, Defendant was detained and asked immigration questions. Defendant's efforts to distinguish Galindo-Gallegos are distinctions without a difference. Defendant was apprehended less than two miles from the busiest Port of Entry in the United States in an area frequently traveled by undocumented aliens. He was far from alone. Additionally, Defendant's two traveling companions were located a short distance and a time later. As such, there is no Miranda violation.

3. Reasonable Suspicion Existed to Detain Defendant and Establish His Identity

Third, even if he was in custody, an investigatory detention, a brief seizure by police based on reasonable suspicion of criminal activity, is an exception to the probable cause requirement of the Fourth Amendment. See Terry v. Ohio, 392 U.S. 1, 26 (1968).

Here, after being seen moving north from the secondary fence, reasonable suspicion existed to justify the stop. FOS Cortez questioned Defendant as to his citizenship and his right to be in the country. Defendant responded that he was a not a United States citizen and was in the United States illegally. Pennsylvania v. Muniz, 496 U.S. 582, 601-04 (1990) (even if incriminating, answers elicited prior to Miranda warnings during procedures "necessarily attendant to the police procedure [are] held by the court to be legitimate" and admissible). Following discovery of Defendant's illegal attempt to enter the United States, Agents timely advised Defendant that he was under arrest. Defendant was also timely advised of his Miranda warnings, which he waived. All statements prior

---

[7/] Since there was no seizure or detention, it follows a fortiori that there was no custody requiring the Miranda advisement. Similarly, 18 U.S.C. § 3501 does not apply unless there was an arrest (or detention). United States v. Poschwatta, 829 F.2d 1477, 1481-82 (9th Cir. 1987) (overruled on other grounds in Cheek v. United States, 498 U.S. 192 (1991)). In any event, Defendant's statements were voluntary and there was no "police overreaching." Colorado v. Connelly, 479 U.S. 157, 170 ( 1986).

to Defendant's arrest are admissible; and this Court should deny the motion to suppress any statements made prior to arrest.

### C. Routine Booking Information

Finally, upon detaining Defendant, Officers and Agents asked Defendant routine booking questions for the purpose of obtaining background biographical information for filling out a personal history report and a booking slip. The Supreme Court has held that routine booking questions reasonably related to law enforcement record keeping concerns are not testimony and are therefore outside the Fifth Amendment privilege that Miranda is designed to protect. See Pennsylvania v. Muniz, 496 U.S. 582, 600-602 (1990). "Routine gathering of background biographical data does not constitute interrogation sufficient to trigger constitutional protections." United States v. Perez, 776 F.2d 797, 799 (9th Cir. 1985). Citing Rhode Island v. Innis, 446 U.S. 291, 301 (1980), the Ninth Circuit has held that pre-Miranda questions regarding "where and when" a defendant was born "are normal questions 'attendant to arrest and custody,' so Miranda is not implicated." United States v. Arellano-Ochoa, 461 F.3d 1142, 1146 (9th Cir. 2006) (allowing the defendant's statements where he was charged with being a non-immigrant alien in possession of a firearm). Consistent with Muniz and Perez, the Ninth Circuit has allowed police officers to testify in § 1326 prosecutions about a defendant's statements of alienage taken during the booking process. See United States v. Salgado, 292 F.3d 1169, 1174 (9th Cir. 2002). Defendant's responses to the Officers and Agents' questions therefore should be admitted.

## VI

## DEFENDANT'S MOTION FOR LEAVE TO FILE FURTHER MOTIONS

Defendant's motion for leave to file further motions should be denied except to the extent that such motions are based on new discovery.

## VII

## CONCLUSION

For the foregoing reasons, the United States requests that the Court deny Defendant's requests except where unopposed.

DATED: August 13, 2008

Respectfully submitted,

KAREN P. HEWITT
United States Attorney

*s/Carlos O. Cantu*
CARLOS O. CANTU
Special Assistant United States Attorney
Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOSE AGUSTO PEREZ-RAMOS,<br>Defendant. | Criminal Case No. 08CR0539-JLS<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, CARLOS O. CANTU, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of United States' Response and Opposition to Defendant's Motions, together with memorandum of points and authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

1. Sara Peloquin, Esq.
   Atty for Defendant

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

None

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 13, 2008.

*s/Carlos O. Cantu*

CARLOS O. CANTU