KAREN P. HEWITT
United States Attorney
CARLOS O. CANTU
Special Assistant United States Attorney
Government Attorney
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6199
Email: carlos.cantu@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES, | ) | Criminal Case No. 08CR053-JLS |
| Plaintiff, | ) | DATE: September 4, 2008<br>TIME: 9:00 p.m.<br>Before Honorable Janis L. Sammartino |
| v | ) | UNITED STATES' MOTIONS IN LIMINE TO: |
| JOSE AGUSTO PEREZ-RAMOS, | )(A) | EXCLUDE ALL WITNESSES EXCEPT CASE AGENT; |
| Defendant. | )(B) | EXCLUDE EVIDENCE WHY DEFENDANT RE-ENTERED THE UNITED STATES; |
| | )(C) | EXCLUDE EVIDENCE REGARDING PRIOR RESIDENCY; |
| | )(D) | ADMIT A-FILE DOCUMENTS; |
| | )(E) | ADMIT EXPERT TESTIMONY; |
| | )(F) | PROHIBIT REFERENCE TO PUNISHMENT. ETC.; |
| | )(G) | PRECLUDE ARGUMENT REGARDING WARNING; |
| | )(H) | PROHIBIT ARGUMENT REGARDING DURESS AND NECESSITY; |
| | )(I) | PROHIBIT REFERENCE TO DOCUMENT DESTRUCTION; |
| | )(J) | ADMIT RULE 609 EVIDENCE; |
| | )(K) | ADMIT DEPORTATION TAPE OR TRANSCRIPT; |
| | )(L) | PROHIBIT COLLATERAL ATTACK OF THE DEPORTATION; |
| | )(M) | PROHIBIT SELF-SERVING HEARSAY; and |
| | ) | TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

//

//

//

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Carlos O. Cantu, Special Assistant U.S. Attorney, and hereby files its Motions In Limine in the above-referenced case. Said motions are based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

## I

## STATEMENT OF THE CASE

On February 27, 2008, an Indictment was returned in the Southern District of California charging Defendant Jose Agusto Perez-Ramos ("Defendant") with being a deported alien attempting to enter the United States in violation of 8 U.S.C. § 1326. On March 4, 2008, the Court arraigned Defendant on the Indictment and entered a not guilty plea. The Court scheduled a motion hearing date.

On March 7, 2008, the United States filed motions for reciprocal discovery and fingerprint exemplars. On March 14, 2008, Defendant filed motions to compel discovery and grant leave to file further motions.

On March 28, 2008, the Court held a motion hearing and continued the motions to May 9, 2008. After the hearing, it became clear there was a discovery dispute regarding production of the A-File. On April 7, 2008, Defendant filed a motion for production of the A-File. The United States responded. On May 28, 2008, Defendant filed motions to dismiss the indictment due to grand jury instructions, dismiss the indictment due to invalid deportation, suppress statements, and grant leave to file further motions. The United States now responds.

## II

## STATEMENT OF FACTS

### A. The Apprehension

On Monday, February 18, 2008, Border Patrol Agent David H. Nguyen was conducting line watch operation in the Imperial Beach Border Patrol Station area of operations. At approximately

7:20 a.m., Border Patrol Agent Kevin Wies radioed via service radio that he observed two individuals running south in an area known as "compos's Ditch." "Campo's Ditch" is approximately 4 miles west of the San Ysidro, California Port of Entry and approximately 40 yards north of the United States/Mexico International Boundary.

Agent Nguyen responded to the area that Agent Wies last observed the individuals. After a brief search, Agent Nguyen discovered two individuals attempting to conceal themselves in some brush. Due to the fact that this area is commonly used by undocumented immigrants to further their illegal entry into the United States, Agent Nguyen identified himself as a United States Border Patrol Agent and conducted an immigration inspection. Both individuals, including one later identified as Perez-Ramos, Jose Agusto, freely admitted to being citizens and nationals of Mexico, not in possession any immigration documents that would allow them to legally enter or remain in the United States. Agent Nguyen arrested both individuals at approximately 7:30 a.m, and subsequently arranged for their transport to the Imperial Beach Border Patrol Station for processing.

**B. <u>Defendant's Statements</u>**

On February 18, 2008, at approximately 9:31 a.m., Perez provided a DVD recorded sworn statement before Border Patrol Agent Rodolfo Zuniga witnessed before Border Patrol Agent Salvador Correa. During this sworn statement, Perez was advised that his administration rights no longer applied and that he was going to be charged criminally.

On February 18, 2008, at approximately 9:31 a.m., Border Patrol Agent Salvador Correa witnessed Agent Rodolfo Zuniga give Perez his Consular Communication Rights in the Spanish language. Perez understood his Miranda rights and was not willing to answer questions without an attorney present under oath at this time. All questioning ceased at this time.

**C. Defendant's Criminal and Immigration Histories**

Defendant was convicted of felony lewd or lascivious acts with a child under 14, in violation of California Penal Code Section 288(a), in the California Superior Court of Los Angeles on May 16, 2007. For that offense, Defendant was sentenced to 173 days in jail and five years probation. In addition, Defendant was convicted of forgery of official seal, in violation of California Penal Code Section 472, in the California Superior Court of Downey on September 30, 2000, and received a

sentence of 90 days in jail and 36 months probation. Defendant was also convicted of trespass: occupy property without consent, in violation of California Penal Code Section 602(l), on June 8, 2000, and was sentenced to three days jail and 112 days probation. Defendant was convicted of trespass: occupy property without consent, in violation of California Penal Code Section 602(l), on February 20, 1997, and was sentenced to two days in jail and 12 months of probation. Finally, Defendant was convicted of trespass: occupy property without consent, in violation of California Penal Code Section 602(l), on January 13, 1997, and was sentenced to two days in jail and 12 months of probation.

Defendant was found inadmissible and ordered removed to Mexico on July 16, 2007. Defendant was physically removed to Mexico July 25, 2007.

## III

## MOTIONS IN LIMINE

### A. THE COURT SHOULD EXCLUDE WITNESSES DURING TRIAL WITH THE EXCEPTION OF THE GOVERNMENT'S CASE AGENT

Under Federal Rule of Evidence 615(3), "a person whose presence is shown by a party to be essential to the presentation of the party's cause" should not be ordered excluded from the court during trial. The case agent in the present matter has been critical in moving the investigation forward to this point and is considered by the United States to be an integral part of the trial team. The United States requests that Defendant's testifying witnesses be excluded during trial pursuant to Rule 615.

### B. THE COURT SHOULD PROHIBIT REFERENCE TO WHY THE DEFENDANT REENTERED THE UNITED STATES

Defendant may attempt to offer evidence of the reason for his reentry, or alternatively, his belief that he was entitled to do so. Defendant may also attempt to offer evidence of the reason for his being in the United States, or alternatively, his belief that he was entitled to be here. The Court should preclude him from doing so. Evidence of why Defendant violated Section 1326 is patently irrelevant to the question of whether he did so -- the only material issue in this case. Rule 401 defines "relevant evidence" as:

> evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Fed. R. Evid. 401.

Rule 402 states that evidence "which is not relevant is not admissible." Fed. R. Evid. 402. Here, the reason why Defendant reentered the United States, and his belief that he was justified in doing so, is irrelevant to whether he violated Section 1326. Likewise, the reason why Defendant was in the United States, and his belief that he was justified in being here, is also irrelevant.

The case of United States v. Komisaruk, 885 F.2d 490 (9th Cir. 1980), is illustrative. There, Komisaruk was convicted of willfully damaging government property by vandalizing an Air Force computer. Id. at 491. On appeal, she argued that the district court erred in granting the government's motions in limine to preclude her from introducing her "political, religious, or moral beliefs" at trial. Id. at 492. In particular, she argued that she was entitled to introduce evidence of her anti-nuclear war views, her belief that the Air Force computer was illegal under international law, and that she was otherwise morally and legally justified in her actions. Id. at 492-93. The district court held that her "personal disagreement with national defense policies could not be used to establish a legal justification for violating federal law nor as a negative defense to the government's proof of the elements of the charged crime," and the Ninth Circuit affirmed. Id. at 492. Similarly here, the reason why Defendant reentered the United States and his belief that he was entitled to do so, and the reason why he was in the United States and his belief that he was entitled to be here, are irrelevant to any fact at issue in this case.

## C. THE COURT SHOULD PROHIBIT REFERENCE TO PRIOR RESIDENCY

If Defendant seeks to introduce evidence at trial of his former residence in the United States, legal or illegal, the Court should preclude him from doing so. Such evidence is not only prejudicial, but irrelevant and contrary to Congressional intent.

In United States v. Ibarra, 3 F.3d 1333, 1334 (9th Cir. 1993), the district court granted the United States' motion in limine to preclude Ibarra from introducing "evidence of his prior legal status in the United States, and the citizenship of his wife, mother and children" in a Section 1326 prosecution. Id., overruled on limited and unrelated grounds by United States v. Alvarado-Delgado, 98 F.3d 492, 493 (9th Cir. 1996). He appealed, and the Ninth Circuit affirmed, reasoning that, because Ibarra had failed to demonstrate how the evidence could possibly affect the issue of his alienage, the district court properly excluded it as irrelevant. Id.

Similarly, in United States v. Serna-Vargas, 917 F. Supp. 711 (C.D. Cal. 1996), the Defendant filed a motion in limine to introduce evidence of what she termed "de facto" citizenship as an

affirmative defense in a Section 1326 prosecution. Id. at 711. Specifically, she sought to introduce evidence of:

(1) involuntariness of initial residence;

(2) continuous residency since childhood;

(3) fluency in the English language; and

(4) legal residence of immediate family members.

Id. at 712. The court denied the motion, noting that "none of these elements are relevant to the elements that are required for conviction under § 1326." Id. at 712. The court also noted that admission of the evidence would run "contrary to the intent of Congress." Id. In particular, the court stated that, under Section 212 of the Immigration and Naturalization Act of 1952 (codified at 8 U.S.C. § 1182(c)), the Attorney General may exercise his discretion not to deport an otherwise deportable alien, if the alien has lived in the United States for 7 years. Id. at 712-13. The factors which the Defendant relied upon to establish her "de facto" citizenship, the court noted, are "among the factors the Attorney General considers in deciding whether to exercise this discretion." Id. at 713.

Thus, the court reasoned, "the factors that [the Defendant] now seeks to present to the jury are ones that she could have presented the first time she was deported." Id. Therefore, the court held, "[a]llowing her to present the defense now would run contrary to Congress' intent." Id. In particular, "under the scheme envisioned by Congress, *an alien facing deportation may present evidence of positive equities only to administrative and Article III judges, and not to juries*." Id. (emphasis added).

**D. <u>THE COURT SHOULD ADMIT A-FILE DOCUMENTS</u>**

The Government intends to offer documents from the Alien Registration File, or "A-file," that correspond to Defendant's name and A-number in order to establish Defendant's alienage and prior deportation as well as the lack of documentation showing that when he attempted to reenter the United States, Defendant had not sought or obtained authorization from the Secretary of the Department of Homeland Security. Specifically, the United States will offer the July 16, 2007, Order of the Immigration Judge, the July 25, 2007, Warrant of Deportation, the December 1, 2006, Notice to Appear, and a Certificate of Non-Existence of Record, or CNR.[1/] These documents are self-

---

[1/]The Certificate of Non-Existence of Records has been ordered by the United States' case agent; (continued...)

authenticating "public records," Fed. R. Evid. 803(8)(B), or, alternatively, "business records." Fed. R. Evid. 803(6) and should be admitted.

The Ninth Circuit has addressed the admissibility of A-File documents in United States v. Loyola- Dominguez, 125 F.3d 1315 (9th Cir. 1997). There, Loyola-Dominguez appealed his § 1326 conviction, arguing, among other issues, that the district court erred in admitting at trial certain records from his "A-file." Id. at 1317. The district court had admitted: (1) a warrant of deportation; (2) a prior warrant for the Defendant's arrest; (3) a prior deportation order; and (4) a prior warrant of deportation. The Defendant in Loyola-Dominguez argued that admission of the documents violated the rule against hearsay, and denied him his Sixth Amendment right to confront witnesses. The Ninth Circuit rejected his arguments, holding that the documents were properly admitted as public records. Id. at 1318. The court first noted that documents from a Defendant's immigration file, although "made by law enforcement agents, . . . reflect only 'ministerial, objective observation[s]' and do not implicate the concerns animating the law enforcement exception to the public records exception." Id. (quoting United States v. Hernandez-Rojas, 617 F.2d 533, 534-35 (9th Cir. 1980)). The court also held that such documents are self-authenticating and, therefore, do not require an independent foundation. Id.

The Ninth Circuit has consistently held that documents from a Defendant's immigration file are admissible in a § 1326 prosecution to establish the Defendant's alienage and prior deportation. See United States v. Bahena-Cardenas, 411 F.3d 1067 (9thCir. 2005) (warrant of deport is nontestimonial because it is not made in anticipation of litigation and is a routine, objective cataloging of unambiguous factual matter.); United States v. Mateo-Mendez, 215 F.3d 1039, 1042-45 (9th Cir. 2000) (district court properly admitted certificate of nonexistence); United States v. Contreras, 63 F.3d 852, 857-58 (9th Cir. 1995) (district court properly admitted warrant of deportation, deportation order and deportation hearing transcript); United States v. Hernandez-Rojas, 617 F.2d at 535 (district court properly admitted warrant of deportation as public record); United States v. Dekermenjian, 508 F.2d 812, 814 n.1 (9th Cir. 1974) (district court properly admitted "certain records and memoranda of the Immigration and Naturalization Service" as business records, noting that records would also be admissible as public

---

[1](...continued)
at this time the CNR has not been received. The United States will produce the CNR to Defendant as soon as it is received.

records).

**1. The Court Should Admit the CNR**

At trial, the United States anticipates introducing a Certificate of Nonexistence of Record, or CNR, stating that there is no record of Defendant's having received consent to reenter the United States. As the Ninth Circuit recently held, the CNR is nontestimonial evidence and may be admitted. United States v. Cervantes-Flores, 421 F.3d 825, 834 (9th Cir. 2005).

**2. The Court Should Admit the Warrant of Deportation**

At trial, the United States will offer Defendant's July 25, 2007, Warrant of Deportation, or I-205, to show that Defendant was physically removed from the United States pursuant to the immigration judge's order. Similar to the CNR, a warrant of deportation contains a "routine, objective, indeed mechanical recording of an unambiguous factual matter" and is admissible, nontestimonial evidence. United States v. Bahena-Cardenas, 411 F.3d 1067, 1075 (9th Cir. 2005) (citation omitted).

Defendant's Warrant of Deportation will be relevant at trial for several reasons. First, the United States bears the burden of proving beyond a reasonable doubt that Defendant was physically removed from the United States after the order of deportation and before his entry on March 1, 2008. See id. at 1074 (citing United States v. Romo-Romo, 246 F.3d 1272, 1275-76 (9th Cir. 2001)); see also United States v. McClelland, 941 F.2d 999, 1003 (9th Cir. 1991) ("Clearly, the requirement that the Government prove beyond a reasonable doubt every element of the charged offense is of the most fundamental nature.").

In addition to proving a prior deportation, the Warrant also provides circumstantial evidence of two other elements – alienage and lack of permission to be in the United States. See United States v. Hernandez-Herrera, 273 F.3d 1213 (9th Cir. 2001) ("We have held that deportation documents are admissible to prove alienage under the public records exception to the hearsay rule"). Both Warrants shows that Defendant was still subject to deportation, when he was apprehended on February , 2008.

**E. THE COURT SHOULD ADMIT EXPERT TESTIMONY**

At trial, the Government intends to offer testimony of its fingerprint analyst to identify the Defendant as the person who was previously deported. Defendant was notified of the United States' intention to use a fingerprint expert in the Government's March 7, 2008, motion requesting fingerprint exemplars.

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question. Fed. R. Evid. 702. Determining whether expert testimony would assist the trier-of-fact in understanding the facts at issue is within the sound discretion of the trial judge. United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995); United States v. Lennick, 18 F.3d 814, 821 (9th Cir. 1994). An expert's opinion may be based on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field. Fed. R. Evid. 703. In addition, an expert may provide opinion testimony even if the testimony embraces an ultimate issue to be decided by the trier-of-fact. Fed. R. Evid. 704.

It is anticipated the Government's fingerprint expert will testify that based upon fingerprint comparisons, Defendant was the same person deported on July 25, 2007, and who reentered the United States on or about February 18, 2008. In addition, the Government's fingerprint expert may testify to establish the foundation for any prior acts or convictions the United States seeks to use at trial. This testimony should be admitted under Rules 702 and 703.

**F. THE COURT SHOULD PROHIBIT REFERENCE TO DEFENDANT'S HEALTH, AGE, FINANCES, EDUCATION AND POTENTIAL PUNISHMENT**

Evidence of, and thus argument referring to, Defendant's health, age, finances, education and potential punishment is inadmissible and improper.

Rule of Evidence 402 provides that "[e]vidence which is not relevant is not admissible." Rule 403 provides further that even relevant evidence may be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice." The Ninth Circuit Model Jury Instructions explicitly instruct jurors to "not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy." § 3.1 (2000 Edition).[2/]

Reference to Defendant's health, age, finances, education and potential punishment may be relevant at sentencing. However, in an illegal entry trial, such reference is not only irrelevant and unfairly prejudicial, but a blatant play for sympathy and jury nullification as well.

**G. THE COURT SHOULD PRECLUDE DEFENDANT FROM ARGUING PERMISSION**

---

[2/] Additionally, it is inappropriate for a jury to be informed of the consequences of their verdict. United States v. Frank, 956 F.2d 872, 879 (9th Cir. 1991), cert. denied, 506 U.S. 932 (1992).

**TO REENTER BASED UPON WARNING TO ALIEN DEPORTED**

The Court should preclude any argument that Defendant believed he was not required to obtain the permission from the Attorney General or his designated successor the Secretary of the Department of Homeland Security prior to reentry into the United States or that Defendant believed he had permission to enter the United States based on any confusion or alleged error in the execution of the I-294 Warning to an Alien Deported or statements made by the immigration judge at the July 16, 2007. deportation hearing. See United States v. Ramirez-Valencia, 202 F.3d 1106, 1109-10 (9th Cir. 2000) (holding that such a claim is legally insufficient and any such argument improper).

**H. THE COURT SHOULD PRECLUDE ARGUMENT CONCERNING DURESS AND NECESSITY**

Courts have specifically approved the pretrial exclusion of evidence relating to a legally insufficient duress defense on numerous occasions. See United States v. Bailey, 444 U.S. 394 (1980) (addressing duress); United States v. Moreno, 102 F.3d 994, 997 (9th Cir. 1996), cert. denied, 522 U.S. 826 (1997) (addressing duress). Similarly, a district court may preclude a necessity defense where "the evidence, as described in the Defendant's offer of proof, is insufficient as a matter of law to support the proffered defense." United States v. Schoon, 971 F.2d 193, 195 (9th Cir. 1992).

In order to rely on a defense of duress, Defendant must establish a prima facie case that:

(1) Defendant committed the crime charged because of an immediate threat of death or serious bodily harm;

(2) Defendant had a well-grounded fear that the threat would be carried out; and

(3) There was no reasonable opportunity to escape the threatened harm.

United States v. Bailey, 444 U.S. 394, 410-11 (1980); Moreno, 102 F.3d at 997. If Defendant fails to make a threshold showing as to each and every element of the defense, defense counsel should not burden the jury with comments relating to such a defense. See, e.g., Bailey, 444 U.S. at 416.

A Defendant must establish the existence of four elements to be entitled to a necessity defense:

(1) that he was faced with a choice of evils and chose the lesser evil;

(2) that he acted to prevent imminent harm;

(3) that he reasonably anticipated a causal relationship between his conduct and the harm to be avoided; and

(4) that there was no other legal alternative to violating the law.

See Schoon, 971 F.2d at 195; United States v. Dorrell, 758 F.2d 427, 430-31 (9th Cir. 1985). A court may preclude invocation of the defense if "proof is deficient with regard to any of the four elements." See Schoon, 971 F.2d at 195.

The United States hereby moves for an evidentiary ruling precluding defense counsel from making any comments during the opening statement or the case-in-chief that relate to any purported defense of "duress" or "coercion" or "necessity" unless Defendant makes a prima facie showing satisfying each and every element of the defense. The United States respectfully requests that the Court rule on this issue prior to opening statements to avoid the prejudice, confusion, and invitation for jury nullification that would result from such comments.

## I. THE COURT SHOULD PROHIBIT EXAMINATION OR REFERENCE TO ALLEGED DOCUMENT DESTRUCTION AND POOR RECORD KEEPING

The United States seeks to exclude the Defendant from making reference or eliciting testimony regarding (former) Immigration and Naturalization Services' ("INS"), now Department of Homeland Security's record keeping or access to information and records. Specifically, the United States seeks to preclude reference to argument that (1) INS computers are not fully interactive with other federal agencies' computers, (2) over 2 million documents filed by immigrants have been lost or forgotten, (3) other federal agencies have the ability and authority to apply for an immigrant to come into the United States, (4) the custodian of the A-File never checked with other federal agencies to inquire about documents relating to the Defendant. Such argument is irrelevant based upon the facts of this case as there has been no proffer or mention by the Defendant that he ever made application to seek reentry after deportation. See United States v. Rodriguez-Rodriguez, 364 F.3d 1142 (9th Cir. 2004) (affirming District Court Judge Lorenz's rulings to deny such testimony in a § 1326 "found in" case with similar facts).

The Ninth Circuit Court of Appeals held in Rodriguez-Rodriguez that any such testimony or cross examination seeking to elicit such testimony is properly barred as irrelevant. Id. at 1146. The Ninth Circuit explicitly rejected Defense counsel's claim that the District Court's exclusion of the anticipated testimony violates the Confrontation Clause. Instead, it declared that "none of the that information is relevant on the facts of this case, because it is uncontested that Rodriguez never made

any application to the INS or any other federal agency." Thus, absent at a minimum a proffer that Defendant had in fact applied for or obtained permission to enter or remain in the United States in this instant case, any such line of inquiry on cross examination or on direct testimony is irrelevant and properly excludable.

Additionally, the United States seeks to preclude reference to shredding of immigration documents by a (former) INS contractor as set forth in United States v. Randall, et al., Criminal Case No. SA CR 03-26-AHS (C.D. Cal. 2003) unless the Defendant testifies or offers evidence that (1) he did in fact apply for permission to reenter the United States from the Attorney General, or his designated successor, the Secretary of the Department of Homeland Security and (2) that such a document would have been stored at that particular facility where the shredding occurred in the Randall case. Any reference of document destruction is irrelevant and unfairly prejudicial unless there is some evidence offered by the Defendant at trial that he did in fact seek permission to reenter the United States. See Fed. R. Evid. 401-403. Moreover, even if the Defendant offers evidence that he did apply, there must be some showing that his application would have been stored at the facility which is the subject of the Randall case during the time of the alleged shredding of the documents. Otherwise, it is immaterial and irrelevant whether a contractor of (former) INS destroyed documents at the INS California Service Center in Laguna Niguel, California because the Defendant did not apply, or if he did apply, his application was not stored there, and therefore, could not have been effected. Such testimony as well as any such statements asserted in Defendant's opening or closing arguments would be unfairly prejudicial to the United States and likely to cause confusion to the jury because such unsupported blanket allegations or references of document destruction or poor record keeping without any showing by the Defendant that he applied for permission to reenter would be misleading. Accordingly, the United States seeks an order precluding such argument.

**J. THE COURT SHOULD ADMIT RULE 609 EVIDENCE**

The United States intends to use the Defendant's prior convictions for impeachment purposes under Rule 609. Specifically, the United States intends to inquire about Defendant's May 16, 2007, conviction for lewd or lascivious acts with a child under the age of 14, in violation of Cal. Penal Code § 288(a), for which he was sentenced to 173 days in jail and five years probation. The United States also intends to inquire about Defendant's September 20, 2000, conviction for forgery of an official seal,

in violation of Cal. Penal Code § 472, for which he was sentenced to 90 days in jail and 36 months probation.

The United States will also use Defendant's convictions should Defendant contend that he had permission to enter the United States or that he did not need permission to enter. If Defendant testifies at trial, he will place his credibility squarely at issue, and the United States should be able to inquire in particular about his recent convictions.

Federal Rule of Evidence 609(a) provides in pertinent part

> For purposes of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.

Fed. R. Evid. 609(a). The Ninth Circuit has listed five factors that the district court should balance in making the determination required by Rule 609. United States v. Browne, 829 F.2d 760, 762-63 (9th Cir. 1987). Specifically, the court should consider 1) the impeachment value of the prior crime; 2) the point in time of the conviction and the witness's subsequent history; 3) the similarity between the past crime and the charged crime; 4) the importance of the Defendant's testimony; and 5) the centrality of the Defendant's credibility. Id. at 762-63. See also United States v. Hursh, 217 F.3d 761 (9th Cir. 2000).

Here, Defendant's felony convictions can be used as 609 evidence. Several of the Browne factors weigh in favor of admitting the Defendant's felony conviction to attack his credibility. First, the impeachment value of Defendant's felony convictions, which show his disregard for the law, is high. As such, his criminal record would cast doubt on Defendant's credibility should he testify. Second, the importance of Defendant's testimony is crucial in a case such as this, where Defendant would presumably testify if he intends to challenge one of the elements of the offense. For example, if Defendant testifies that he had received, or did not need, permission to enter the United States, he would essentially "open the door" to his immigration and criminal history. In addition, because such a challenge could only be developed through Defendant's own testimony, his credibility in asserting such a challenge would be central to the case. Furthermore, whatever risk of unfair prejudice exists can be adequately addressed by sanitizing his convictions and with a limiting jury instruction.

Accordingly, the Government should be allowed to introduce evidence of Defendant's prior felony convictions under Rule 609(a) if he elects to testify at trial.

**K. THE COURT SHOULD PROHIBIT COLLATERAL ATTACK OF DEFENDANT'S PRIOR DEPORTATION**

Defendant should not be permitted to argue the lawfulness of his deportation to the jury at trial. See United States v. Alvarado-Delgado, 98 F.3d 492 (9th Cir. 1996) (en banc). The lawfulness of the deportation is not an element of the offense under Section 1326, so this issue should not be presented to or determined by a jury. Id. at 493.

Moreover, in United States v. Garza-Sanchez, 217 F.3d 806, 808 (9th Cir. 2000), the Ninth Circuit held that a Defendant who previously waived his right to appeal cannot collaterally attack his deportation:

> A Defendant charged under 8 U.S.C. § 1326 may not collaterally attack the underlying deportation order if he or she did not exhaust administrative remedies in the deportation proceedings, including direct appeal of the deportation order. Accordingly, a valid waiver of the right to appeal a deportation order precludes a later collateral attack.

(citations omitted).

In this case, Defendant validly waived his right to appeal his deportation order in 2007 and, therefore, should be precluded from collaterally attacking his deportation. It would be inappropriate to raise this issue before a jury, which is not tasked with determining the validity of the deportation.

**L. THE COURT SHOULD ADMIT THE DEPORTATION TAPE OR TRANSCRIPT**

The United States should be permitted to play the audio tape of the 2007 deportation hearing because Defendant admits therein his citizenship as part of the colloquy. Such an admission is relevant to the element of alienage. In addition, the United States requests that the jury have a copy of the transcript of the deportation hearing proceeding while the audio tape is played to assist the jury in understanding what was said.

**M. THE COURT SHOULD EXCLUDE SELF-SERVING HEARSAY**

Defendant's out of court statements are inadmissible hearsay when offered by defendant through witnesses. Defendant cannot rely on Fed. R. Evid. 801(d)(2) because he is not the proponent of the evidence, and the evidence is not being offered against him. Defendant cannot attempt to have "self-

serving hearsay" brought before the jury without the benefit of cross-examination. See, e.g., United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).

The United States anticipates that Defendant may try to elicit potentially exculpatory statements from witnesses for the government or the defense. Thus, the United States moves, *in limine*, to prohibit defense counsel from eliciting self-serving hearsay from either government witnesses or defense witnesses.

## IV

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court grant its motions in limine.

DATED: September 3, 2008.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

S/ Carlso O. Cantu
CARLOS O. CANTU
Special Assistant United States Attorney
Attorneys for Plaintiff
United States of America
Email: carlos.cantu@usdoj.gov

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>JOSE AGUSTO PEREZ-RAMOS,<br>Defendant. | Criminal Case No. 08CR0539-JLS<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, Carlos O. Cantu, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of **UNITED STATES' MOTIONS IN LIMINE** on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Sara Marie Peloquin, Esq.**

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 3, 2008.

s/ Carlos O. Cantu
CARLOS O. CANTU